Ida G. KRAMER and Hyman Kramer, Plaintiffs,

v.

LAKESIDE LABORATORIES, Defendant.

Civ. A. No. 29816.

United States District Court
E. D. Pennsylvania.

Jan. 2, 1962.

---

6. Cardozo, The Nature of the Judicial Process, 155 (1921).

7. Pltff.'s Brief of Sept. 23, 1961, p. 4.

Ronald Ziegler, Philadelphia, Pa., for plaintiffs.

John J. McDevitt, 3rd, Philadelphia, Pa., for defendant.

WELSH, Senior District Judge.

This action filed in this Court (The United States District Court for the Eastern District of Pennsylvania) on June 26, 1961 is for damages on account of injuries alleged to have been sustained by Ida G. Kramer, wife-plaintiff, between June 29, 1959 and July 20, 1959 from the use of a medical product known as "IMFERON" manufactured by defendant and administered to the wife-plaintiff by a doctor. The complaint alleges that the injuries were due to defendant's 1. negligence (a) in failing to make reasonable tests of the product manufactured, packaged and distributed by it and to insure that it could be safely used for the purpose for which it was intended and (b) in failing to state on the instructions for use that the drug manufactured by it could not be safely injected into human beings and 2. breach of its implied warranty that the drug was fit for human use, to wit, injections into the human body. The complaint was served upon the defendant through the Secretary of the Commonwealth, purportedly in accord with the provisions of § 1011, subd. B of the Business Corporation Law of May 5, 1933 as amended, P.L. 364, 15 P.S. § 2852–1011.

Defendant, a non-registered foreign corporation, has filed a motion to dismiss and an amended motion to dismiss the complaint challenging the jurisdiction of the Court over its person upon the grounds that (1) it was not "doing business" in Pennsylvania and (2) the action did not arise out of any "acts or omissions" of the defendant in Pennsylvania.

The sole question is whether the service of process was valid under Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.[1] and under § 1011, subd. B which, in pertinent part, provides:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of

---

[1] Rule 4 provides that service may be made " * * * in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." Thus, determination of the validity of service of process in this case depends upon local law.

authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth."

§ 1011, subd. B clearly sets forth two jurisdictional requirements which must be satisfied before a non-registered foreign corporation may be validly served with process through the Secretary of the Commonwealth: (1) the corporation must have "done business" in the Commonwealth as that phrase is defined in § 1011, subd. C [2] and (2) the action must arise out of "acts or omissions" of the corporation within the Commonwealth.

§ 1011, subd. C provides: "For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'."

■ Our examination and analysis of the instant record indicates that the defendant has done business in Pennsylvania within the intendment of § 1011, subd. C.

Defendant, a manufacturer of drug products, is a Delaware corporation [3] with its only office in Milwaukee, Wisconsin.

It sells its products to wholesalers, hospital and physician supply houses in Pennsylvania. These customers send their orders by mail to the Milwaukee, Wisconsin, office where the orders are accepted and filled. Shipments are made into Pennsylvania by truck, rail, parcel-post or air. It employs five detailmen who call upon doctors to explain the use of its products. Wholesalers who purchase its products sell them to retail drug stores where prescriptions for the products are filled. Physician supply houses sell the products to physicians who administer them or dispense the products to patients. The products sold to hospitals are administered in the hospitals to hospitalized patients or dispensed to outpatients.

Two of the five detailmen employed by it not only reside in Pennsylvania but are assigned exclusively to Pennsylvania. Another lives in New Jersey but works exclusively in Pennsylvania. A fourth lives in Pennsylvania and works exclusively in Pennsylvania with the one exception of his territory in Warren County, New Jersey. The fifth lives in Pennsylvania but covers Pennsylvania along with Delaware, Maryland and Virginia. All of the detailmen are salaried and receive a bonus currently based on 2% of the sales presumably credited to such employees. Samples of the defendant's products are carried on the person of the five detailmen. Defendant does not deny that these five detailmen call upon customers of the defendant in Pennsylvania, but does not have records available as to the exact number of times its employees actually make such calls.

From the foregoing facts there arises the inference that at least two of defendant's detailmen were constantly within the Commonwealth constantly doing what they were paid to do, that is, promoting their employer's product. Obviously, since the detailmen of the defendant were not only paid a salary but also a bonus based on the sales credited to them, it was part of their job to keep in contact with customers of the defendant and create contacts with other po-

2. Added by Act of November 10, 1959, P.L. 1406, § 1, 15 P.S. § 2852–1011, subd. C. (Pocket Parts).

3. The defendant was a Wisconsin corporation, having been incorporated in Wisconsin on October 21, 1924. The present, successor corporation, is a Delaware corporation, having been incorporated in Delaware on December 15, 1959.

tential users of defendant's products. These employees carried samples of the products of defendant on their very person for what purpose, other than to advise defendant's customers on the new products being manufactured by the defendant and generally to promote the defendant's products.

Unlike the case of Swavely v. Vandergrift, 19 Pa.Dist & Co.R.2d 153, affirmed 397 Pa. 281, 154 A.2d 779, here (as in Mays v. Oxford Paper Company, D.C., 195 F.Supp. 414) we have a clear case of agency between the defendant and its local representatives. The representatives are salaried employees and not independent contractors who have interests in products of some other companies. Although defendant has no office or property in Pennsylvania, we think that the constant contacts with defendant's customers in Pennsylvania by two salaried employees because of the purpose of their job and because Pennsylvania is their exclusive territory constitute the defendant's entry into the Commonwealth within the meaning of § 1011, subd. C. Certainly, the defendant has derived a pecuniary benefit of substantial magnitude as a result of its entry into the Commonwealth. Defendant had gross sales of $152,229.00 and $119,142.-00 in Pennsylvania for the years 1959 and 1960 respectively.

■ Even though the defendant had been doing business within the meaning of § 1011, subd. C, did this action arise out of any "acts or omissions" of the defendant in Pennsylvania as required by § 1011, subd. B?

In Rufo v. Bastian-Blessing Company, 405 Pa. 12, 173 A.2d 123 the Supreme Court of Pennsylvania had the occasion to construe the meaning of this portion of § B, i. e., "action[s] arising out of acts or omissions * * * within this Commonwealth".

Prior to Rufo, the law of this Circuit and this District was that if an injury occurred in Pennsylvania the action did arise out of "acts or omissions" of the defendant in Pennsylvania within the meaning of § 1011, subd. B and service upon an unregistered foreign corporation in accordance with the provisions of said section was valid. Florio v. Powder Power Tool Corp., 3 Cir., 248 F. 2d 367 and Mays v. Oxford Paper Company, supra. In the absence of any legislative intent or Pennsylvania Supreme Court decision, this law remained. However, in Rufo, the Pennsylvania Supreme Court held that service on an unregistered foreign corporation under § 1011, subd. B was valid in an action arising out of "acts or omissions" occurring in Pennsylvania and invalid where the harm or injury occurred in Pennsylvania but the "acts or omissions" constituting negligence or breach of warranty occurred outside of Pennsylvania. In Rufo, the Pennsylvania Supreme Court, after examining the facts and finding that the acts or omissions constituting negligence or breach of warranty did not occur in Pennsylvania but in Illinois, held that service upon the unregistered foreign corporation in accordance with the provisions of § 1011, subd. B was invalid.

We now apply the principle of Rufo to the instant case. The acts or omissions constituting negligence and breach of warranty relate to the manufacture of one of defendant's products "IMFER-ON". Said product was manufactured in Wisconsin; the conclusion, therefore, is inescapable—that this action did not arise out of "acts or omissions" by the defendant in Pennsylvania. Accordingly, we hold that service on the defendant non-registered foreign corporation under the provisions of § 1011, subd. B was invalid.

For reasons stated in the foregoing opinion defendant's motion to dismiss and amended motion to dismiss will be granted.

It is so ordered.